## STATE v. TED AIKEN.

(Filed 22 March, 1939.)

**1. Criminal Law § 48c—**

Where the trial court fully instructs the jury that it should not consider evidence admitted but subsequently withdrawn by the court, the admission of the evidence cannot be held prejudicial, and the denial of defendant's motion for a new trial will not be held error.

**2. Homicide § 18—**

An alleged dying declaration, even when proper predicate is laid for its admission, is not competent unless it relates to the act of the killing, or to the circumstances so immediately attendant thereon as to constitute a part of the *res gestæ.*

**3. Criminal Law § 79—**

In order to present for review the ruling of the trial court upon the admission of evidence, defendant must bring forward his exception to the evidence in his brief.

**4. Homicide § 18—Alleged dying declaration held not to relate to the res gestæ and its admission in evidence was error.**

The State contended and offered evidence tending to show that the defendant inflicted wounds on deceased, resulting in his death, in a fight occurring at a filling station some distance from the railroad track where deceased was found in an unconscious condition the following morning. Defendant offered evidence of the schedule of trains passing over the tracks near which deceased was found, and the State offered evidence as to the construction of trains and the topography of the land to rebut the conjecture that deceased had been struck by a passing train. The trial court admitted in evidence testimony of an alleged dying declaration of the deceased that he had not been hit by a train. *Held:* The State's evidence and contentions were that the fight occurred at the filling station and that the fatal wound was there inflicted, and the evidence of defendant introduced to raise the conjecture that the deceased had been struck by a passing train was wholly irrelevant and immaterial, and therefore the alleged dying declaration in nowise related to the *res gestæ* and was likewise irrelevant, and its admission was erroneous.

**5. Criminal Law § 81c—**

Since the State in a prosecution for homicide is not required to negative the mere possibility that deceased received his fatal wound other than at the hands of the defendant, the admission of testimony of a declaration of deceased that he had not been struck by a train has no bearing on the question of the guilt or innocence of the defendant and its admission, though erroneous, is harmless.

APPEAL by defendant from *Rousseau, J.,* at January Term, 1939, of McDOWELL. No error.

Criminal action in which the defendant was tried under a bill of indictment charging him with the murder of one Dennis Gibbs.

The defendant was employed by one Joe Hensley, who operated a filling station near Nebo. From about 6:00 p.m. until 9:00 p.m. on the night of 5 September, 1938, the defendant, Joe Hensley, the deceased and others were at the filling station matching coins to determine who would pay for playing the piccolo. The State offered evidence tending to show that the defendant had been drinking and was somewhat under the influence of intoxicating liquor; that some of the parties dropped out of the matching game and left; that Hensley and another went off to get some potatoes; that while he was gone an argument ensued between the defendant and the deceased, in which epithets were exchanged; that the defendant struck the deceased and pushed him into an adjoining room which was not lighted; that he then picked up a blackjack and

monkey wrench and beat the deceased with these for several minutes; that the clothes of the deceased were torn and he was bloody on his back and face; that Joe Hensley returned and carried the deceased to a point near the railroad crossing about 100 yards from the home of the deceased and that the deceased was thereafter found in a dazed condition lying practically at right angles to the railroad track with his head in between two of the crossties. It also offered evidence tending to show that the defendant had stated that about ten or fifteen minutes of the time during the evening his mind went blank and he did not remember what occurred; that he did not believe he could have inflicted such a wound. There was other testimony tending to support and corroborate this evidence.

The defendant denied the assault and offered evidence tending to impeach the character of the State's principal witness, Natallie Bradley, and to show that when Hensley carried the deceased away from the station he was not injured. He also offered evidence as to the schedule of trains passing over the railroad track at the point where the deceased was lying during the period between the time he was carried away from the filling station and the time his body was found. In rebuttal the State offered evidence as to the topography of the land at the railroad crossing; the position of the body when found; the location of the steps and handrails to the coal car or tender, the physical makeup of a box-car and other parts of a train. It likewise offered, as a dying declaration, statements of the deceased that a train did not, strike him.

The jury returned a verdict of "Guilty of manslaughter." From judgment thereon the defendant appealed.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Wettach for the State.*

*G. F. Washburn for defendant, appellant.*

BARNHILL, J. All of the evidence tends to show that the proximate cause of the death of deceased was a wound in his lower back which broke two ribs, and that he was bruised about the face and head; that the wound in the back "bruised itself through the tissue," and the wound was filled with dirty grease. The doctor testified that the wound in the back was the primary cause of death and that internal hemorrhage and traumatic pneumonia which developed were the immediate cause.

The court below admitted a statement of the deceased that the train had not hit him, made at the time he was found at the railroad track. Thereafter the court withdrew this testimony and instructed the jury that they should eliminate it from their minds entirely and not consider it at all. The defendant moved that a juror be withdrawn and a mis-

trial ordered. The motion was denied. In view of the full instruction of the court to the jury in withdrawing this testimony, we can see no error in its refusal to allow the motion for a new trial.

The court likewise admitted evidence of a statement by the deceased, made at the hospital, that he would be a dead man in thirty minutes and that the train did not strike him. The State's evidence tends to show that this statement was made in the emergency room of the hospital; that the deceased later repeated the statement on several occasions; and that he thereafter told his sister that he had been beaten about the head with a blackjack. Except for this latter statement the deceased did not undertake to tell how he received the injuries from which he was suffering. The defendant assigns as error admission of the statements of the deceased, and this constitutes one of the exceptions principally relied upon.

*Stacy, C. J.,* speaking for the Court, and citing numerous authorities, states the rule governing admissibility of dying declarations in *S. v. Beal,* 199 N. C., at page 296, as follows: "The general rule is, that, in prosecutions for homicide, declarations of the deceased, made while sane, when *in extremis* or *in articulo mortis,* and under the solemn conviction of approaching dissolution, concerning the killing or facts and circumstances which go to make up the *res gestæ* of the act, are admissible in evidence, provided the deceased, if living and offered as a witness in the case, would be competent to testify to the matters contained in the declarations." He further says: "We have a number of decisions to the effect that dying declarations are admissible in cases of homicide when they relate to the act of killing, or to the circumstance so immediately attendant thereon as to constitute a part of the *res gestæ,* and appear to have been made by the victim in the present anticipation of death, which ensues." It is the prevailing rule which has not been departed from by any court, so far as we know, that the alleged dying declaration, to be admissible, must "relate to the act of killing, or to the circumstances so immediately attendant thereon as to constitute a part of the *res gestæ.*" In considering this rule, it may be conceded that if an affirmative statement of the deceased as to how he received the wound from which he died is admissible, then a negative statement would likewise be admissible. In either event, however, the statement must relate to or constitute a part of the *res gestæ.*

There is a total absence of evidence in the record tending to show that any train struck the deceased. The evidence offered by the defendant as to the schedule of trains passing over the track near which the deceased was found was wholly irrelevant to the issue being tried and was immaterial and incompetent. However, the State "took the bait" and proceeded to offer other evidence about the makeup or construction of

trains and the topography of the land near the crossing. It thus departed from the real issue and engaged with the defendant in chasing rabbits on an issue entirely foreign to the trial, and aided the defendant in constructing a bogey-man that might persuade the jury to conjecture and surmise that the deceased had been struck by a passing train. All of this evidence was entirely foreign to the question being tried.

Even if it be conceded that if the defendant's testimony had tended to show that the difficulty between the deceased and the defendant occurred at or near the railroad crossing the statements of the deceased, when a proper foundation was laid, would be competent in rebuttal to negative competent evidence that the deceased had been struck by a train, such is not the case here. The State's evidence tends to show, and it contended, that the fight occurred at the filling station some considerable distance from the railroad, and that the fatal wound was there inflicted. The evidence offered by the defendant as to the schedule of trains, as heretofore stated, was irrelevant and immaterial. In view of this fact the statements of the deceased, conceding that the foundation was properly laid, in no wise related to the *res gestæ* and was likewise irrelevant and inadmissible. In this connection, we may note that while the defendant excepted to the evidence of the sister of the deceased to the effect that the deceased told her that he was beat about the head with a blackjack, the defendant did not bring forward this exception, and any question as to its relevancy and materiality is not before us.

From a careful examination of the record we are convinced that if the statements of the deceased were in any event competent, they were competent only in rebuttal, and for the reason that the defendant had undertaken to shift the scene of the alleged controversy, and thus make material what occurred at the place where the deceased was struck. As there is no competent evidence tending to show that there was any conflict between the defendant and the deceased at or near the railroad, and the evidence in respect to trains fails to show that the deceased was struck by a train, and any such conclusion is a mere surmise or conjecture, the statements of the deceased, which are the subject of one of the defendant's exceptive assignments of error, were wholly unrelated to the *res gestæ* and were inadmissible in evidence.

The State was not required to negative the mere possibility that the deceased received his fatal wound in some manner other than at the hands of the defendant. The statement of the deceased could have no substantial bearing upon the question of the guilt or innocence of the defendant. Therefore, the admission of this evidence, though erroneous, was harmless.

In the trial below we find

No error.